# EXHIBIT B

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
FEDERAL HOME LOAN BANK OF SAN FRANCISCO, Plaintiff,
v.
DEUTSCHE BANK SECURITIES, INC., et al., Defendants.
Federal Home Loan Bank of San Francisco, Plaintiff,
v.
Credit Suisse Securities (USA), LLC, et al., Defendants.

Nos. 10-3039 SC, 10-3045 SC.
Dec. 20, 2010.

Robert A. Goodin, Anne Hayes Hartman, Francine Terhune Radford, Goodin, MacBride, Squeri, Day & Lamprey, L.L.P., San Francisco, CA, Leanne M. Wilson, Owen L. Cyrulnik, Kathryn C. Ellsworth, David J. Grais, Grais & Ellsworth LLP, New York, NY, for Plaintiff.

Deepa V. Sood, William Robert Pearson, Latham & Watkins LLP, John D. Pernick, Suneeta Daisy Fernandes, Bingham McCutchen, LLP, Jared Robert Sams, Stephen D. Hibbard, Shearman and Sterling LLP, Robert John Stumpf, Sheppard Mullin Richter & Hampton LLP, Martin Daniel White, San Francisco, CA, Jamie Lynne Wine, Latham & Watkins LLP, Brandyne S. Warren, Kenneth I. Schacter, Theo J. Robins, Bingham McCutchen, Adam S. Hakki, Daniel H.R. Laguardia, Shearman & Sterling, Christopher B. Harwood, Michael T. Reynolds, Richard W. Clary, Cravath, Swaine and Moore LLP, Alan Turner, Jason R. Meltzer, Thomas C. Rice, Simpson Thacher & Bartlett LLP, Daniel J. Schwartz, William Fenrich, Davis Polk & Wardwell LLP, New York, NY, John M. Falzone, Latham & Watkins LLP, Newark, NJ, Alexis Susan Coll-Very, Simpson Thacher & Bartlett, Palo Alto, CA, Neal Alan Potischman, Samantha Harper Knox, Davis Polk & Wardwell LLP, Menlo Park, CA, William Francis Sullivan, John Stephen Durrant, Howard Milton Privette, Paul, Hastings, Janofsky & Walker, LLP, Los Angeles, CA, for Defendants.

*ORDER GRANTING MOTIONS TO REMAND*
SAMUEL CONTI, District Judge.
**I. INTRODUCTION**
**\*1** These two related cases concern the Federal Home Loan Bank of San Francisco's ("Plaintiff" or "the FHLB-SF") purchase of certificates in securitization trusts backed by residential mortgage loans.[FN1] Plaintiff alleges that Defendants made untrue statements or omitted important information about the mortgage loans that backed up the securitization trusts. *Deutsche Bank* Action, ECF No. 1 ("DB Notice of Removal") Ex. A ("DB FAC"); *Credit Suisse* Action, ECF No. 1 ("CS Notice of Removal") Ex. A ("CS FAC"). Defendants removed these cases from state court.[FN2]

> [FN1]. The Court related the two cases on July 28, 2010. The Court will refer to Case No. 10-3039 as the *"Deutsche Bank* Action" and Case No. 10-3045 as the "Credit Suisse Action."

> [FN2]. In the *Deutsche Bank* Action, Defendants UBS Securities, LLC ("UBS"), and Mortgage Asset Securitization Transactions, Inc. ("MAST") filed the Notice of Removal. The other Defendants consented to and joined in the removal of the action. In the *Credit Suisse* Action, Defendants Deutsche Bank Securities, Inc., and Deutsche Alt-A Securities, Inc. filed the Notice of Removal. The other Defendants consented to and joined in the removal of the action.

In the *Deutsche Bank* Action, Plaintiff filed a Motion to Remand. ECF No. 71 ("DB Mot. to Re-

mand"). Defendants UBS and MAST filed an Opposition, ECF No. 88 ("UBS and MAST DB Opp'n"), and the other Defendants filed an Omnibus Opposition, ECF No. 90 ("DB Omnibus Opp'n"). Plaintiff filed an Omnibus Reply, ECF No. 118 ("DB Omnibus Reply"), a Reply to the UBS and MAST Opposition, ECF No. 119 ("DB Supp. Reply"), and a Corrected Omnibus Reply, ECF No. 121 ("DB Corrected Omnibus Reply").

In the *Credit Suisse* Action, Plaintiff also filed a Motion to Remand. ECF Nos. 68 ("CS Mot. to Remand"), 77 ("CS Corrected Mot. to Remand"). Defendants UBS and MAST filed an Opposition. ECF No. 89 ("UBS and MAST CS Opp'n"). The other Defendants filed an Omnibus Opposition. ECF No. 91 ("CS Omnibus Opp'n"). Plaintiff filed an Omnibus Reply, ECF No. 119 ("CS Omnibus Reply"), a Reply to the UBS and MAST Opposition, ECF No. 120 ("CS Supp. Reply"), and a corrected Omnibus Reply, ECF No. 122 ("CS Corrected Omnibus Reply").

Having considered all the papers submitted, and for the reasons explained below, the Court GRANTS the motions to remand filed in the *Deutsche Bank* Action and the *Credit Suisse* Action.

**II. BACKGROUND**

The FHLB-SF filed these two actions in California Superior Court for the City and County of San Francisco. The FHLB-SF is a bank created by the Federal Home Loan Bank Act. 12 U.S.C. §§ 1421-49. It is one of twelve regional Federal Home Loan Banks in the Federal Home Loan Bank System, which Congress created in 1932 to provide a reliable source of funds to homebuyers. *See id.* The FHLB-SF seeks rescission of, and/or damages for, its purchase from Defendants of certificates backed by residential mortgage loans. DB FAC ¶¶ 120-68; CS FAC ¶¶ 123-70.

The certificates at issue are mortgage-backed securities, created in a process known as securitization. DB FAC ¶¶ 28-41; CS FAC ¶¶ 29-42. Securitization begins with loans secured by mortgages on residential properties. *Id.* The originators of these loans receive monthly payments from the borrowers, which is referred to as the cash flow from the loans. *Id.* In a securitization, a large number of loans are grouped into a collateral pool. *Id.* The originators sell them to a trust, which then receives the cash flow from the loans. *Id.* The trusts pay the originators by selling bonds, usually called certificates, to investors such as the FHLB-SF. *Id.* Each certificate entitles its holder to an agreed part of the cash flow from the loans in the collateral pool. *Id.*

**\*2** In the *Deutsche Bank* Action, Plaintiff alleges it purchased forty-one certificates in thirty-eight securitization trusts, and that it paid more than $5.9 billion for the certificates. DB FAC ¶ 1. In the *Credit Suisse* Action, Plaintiff alleges it purchased ninety-five certificates in seventy-eight securitization trusts, and that it paid more than $13.5 billion for the certificates. CS FAC ¶ 1.

Plaintiff alleges that when Defendants sold the certificates they made untrue statements or omitted important information about the certificates and the credit quality of the mortgage loans that backed them. Plaintiffs allege that Defendants made false or misleading statements about the percentage of equity that borrowers had in their homes, as reflected in the loan-to-value ratio, the number of borrowers who actually lived in the houses that secured their loans, and the business practices of the originators of the loans. DB FAC ¶¶ 44-119; CS FAC ¶¶ 45-122.

Plaintiff alleges Defendants violated sections 25401 and 25501 of the California Corporations Code, which prohibit the sale of securities by means of communications containing false statements. DB FAC ¶¶ 120-24; CS FAC ¶¶ 123-27. The complaints plead three claims under the federal Securities Act of 1933: under sections 11 and 12(a)(2) against the issuers and sellers of the certificates, and under section 15 against the control persons of the issuers. DB FAC ¶¶ 125-54; CS FAC ¶¶ 128-56. Plaintiff accuses Defendants of negli-

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

gent misrepresentation, and seeks rescission of the certificate purchases. DB FAC ¶¶ 155-68; CS FAC ¶¶ 157-70.

As grounds for removal, Defendants contend that: (i) this action is related to ongoing bankruptcy proceedings; (ii) this Court has original jurisdiction under the charter of the FHLB-SF; and (iii) this Court has original jurisdiction because the FHLB-SF is an agency of the United States. *See* DB Notice of Removal; CS Notice of Removal.

### III. *LEGAL STANDARD*

Federal courts are courts of limited jurisdiction, and a cause of action is presumed to lie outside this limited jurisdiction until the party asserting jurisdiction establishes the contrary. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). A defendant may remove an action from state court if it could have originally been brought in federal court. 28 U.S.C. § 1441. The defendant has the burden of establishing that removal is proper. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992).

### IV. *DISCUSSION*

**A.** *Related-To Bankruptcy Jurisdiction*

Under 28 U.S.C. § 1452, a party may remove a claim to the district court for the district where the claim is pending if the district court has jurisdiction under 28 U.S.C. § 1334. *See* 28 U.S.C. § 1452. Section 1334 establishes original jurisdiction for claims that are "related to cases under title 11." 28 U.S.C. § 1334. A proceeding is related to a bankruptcy case when

> ***3** [T]he outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy ... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). This broad interpretation of related-to bankruptcy jurisdiction is in accord with the Supreme Court's instruction that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (quoting *Pacor,* 743 F.2d at 994).

A number of courts dealing with litigation concerning mortgage-backed securities have recently determined that claims for contractual indemnity against an entity in bankruptcy gives rise to related-to bankruptcy jurisdiction. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 386-87 (5th Cir.2010) (in action against seller of mortgage-backed securities, bankrupt loan originators' agreement to indemnify seller gives rise to related-to bankruptcy jurisdiction); *Fed. Home Loan Bank of Seattle v. Deutsche Bank Sec.,* No. 10-140, --- F.Supp.2d ----, 2010 WL 3512503, at *6 (W.D.Wash. Sept.1, 2010) ( *"FHLB Seattle I"* ) (defendants' indemnification agreements with American Home Mortgage Corporation gives rise to related-to bankruptcy jurisdiction); *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.,* No. 10-0139, 2010 WL 3662345, at 6 (W.D.Wash. Sept.1, 2010) ( *"FHLB Seattle* II") (contractual indemnity agreements with IndyMac gives rise to related-to bankruptcy jurisdiction); *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.,* 572 F.Supp.2d 314, 318-19 (E.D.N.Y.2008) (contractual indemnity claims between defendants and AHM gives rise to related-to bankruptcy jurisdiction); *Mass. Bricklayers and Masons Trust Funds v. Deutsche Alt-A Sec., Inc.,* 399 B.R. 119, 121, 123 (E.D.N.Y.2009) (same).

Defendants contend the Court has related-to bankruptcy jurisdiction over both the *Deutsche Bank* Action and the *Credit Suisse* Action because some of the entities that originated the mortgage

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

loans in the trusts at issue are either currently in bankruptcy, or are related to entities in bankruptcy, and Defendants had indemnification agreements with these originators.

For example, American Home Mortgage Corporation ("AHM") has filed for bankruptcy. *See In re Am. Home Mortg. Holdings,* No. 07-11047 (Bankr.D.Del.). Many of the Defendants in both the *Deutsche Bank* Action and at least one Defendant in the *Credit Suisse* Action purchased loans from AHM, and AHM agreed to indemnify them from the types of claims brought here by the FHLB-SF. *See, e.g.,* Turner Decl. ¶¶ 5-6, Ex. 4 ("Indemnification Agreement between AHM and Greenwich Capital Acceptance, Inc."); [FN3] Rogovitz Decl. ¶¶ 3-4, Ex. 1 ("Master Mortgage Loan Purchase and Interim Servicing Agreement ("MLPA") between AHM and DB Structured Products, Inc.") §§ 7.04, 12A.04, Ex. 2 ("MLPA between AHM and Deutsche Alt-A Securities, Inc."); [FN4] Robins Decl. ¶ 5, Ex. 2 ("Selling and Servicing Contract between AHM and WaMu") § 3. [FN5]

> [FN3]. Alan C. Turner ("Turner"), counsel for RBS Securities Inc., f/k/a Greenwich Capital Markets, Inc., RBS Acceptance Inc., f/k/a Greenwich Capital Acceptance, Inc., and RBS Holdings USA Inc., f/k/a Greenwich Capital Holdings, Inc., filed a declaration in opposition to Plaintiff's motions to remand. *Deutsche Bank* Action, ECF No. 91; *Credit Suisse* Action, ECF No. 94.
>
> [FN4]. Owen Rogovitz ("Rogovitz"), a contract finance associate employed by Deutsche Bank Securities, Inc., filed a declaration in opposition to Plaintiff's motions to remand. *Deutsche Bank* Action, ECF No. 92; *Credit Suisse* Action, ECF No. 92.
>
> [FN5]. Theo J. Robins ("Robins"), counsel for the Defendants J.P. Morgan Securities, Inc., Structured Assets Mortgage Investments II, Inc., The Bear Stearns Companies, LLC, WaMu Capital Corp., and Washington Mutual Mortgage Securities Corp., filed a declaration in opposition to Plaintiff's motions to remand. *Deutsche Bank* Action, ECF Nos. 95, 100; *Credit Suisse* Action, ECF No. 96.

**\*4** Many of the Defendants issued or underwrote mortgage-backed securities that included as collateral mortgage loans originated by IndyMac Bank F.S.B. ("IndyMac"). The Federal Deposit Insurance Corporation ("FDIC") was appointed as IndyMac's receiver in July 2008, and later in the same month, its parent holdings company, IndyMac Bancorp, Inc. ("IndyMac Bancorp") filed for bankruptcy. *In re IndyMac Bancorp, Inc.,* No. 08-21752 (Bankr.C.D.Cal.). Many of these Defendants purchased loans from IndyMac, which agreed to indemnify them for the type of claims that the FHLB-SF brings here. *See, e.g.,* Turner Decl. ¶¶ 3-4, Ex. 2 ("Indemnification Agreement between IndyMac, Greenwich Capital Financial Products, Inc. and Greenwich Capital Acceptance, Inc."); Kaiserman Decl. ¶ 3, Exs. 2, 4, 6, 8, 10, 12, 14 ("Credit Suisse Indemnification and Contribution Agreements"); [FN6] Parniawski Decl. ¶¶ 3-5, Exs. 3, 4 ("MLPAs between IndyMac and UBS Real Estate Securities, Inc."). [FN7]

> [FN6]. Bruce Kaiserman ("Kaiserman"), a managing director employed by Credit Suisse Securities (USA), LLC, filed a declaration in opposition to Plaintiff's motions to remand. *Deutsche Bank* Action, ECF No. 113; *Credit Suisse* Action, ECF No. 114.
>
> [FN7]. Michael Parniawski ("Parniawski"), collateral analyst at UBS, filed a declaration in opposition to Plaintiff's motions to remand. *Deutsche Bank* Action, ECF No. 89; *Credit Suisse* Action, ECF No. 90.

Defendants in both actions have indemnifica-

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

tion agreements with Alliance Bancorp ("Alliance"), an entity that is also in bankruptcy. *See In re Alliance Bancorp,* No. 07-10942 (Bankr.D.Del.); Rogovitz Decl ¶¶ 3, 5, Ex. 3 ("MLPA between Alliance and DB Structured Products, Inc.").[FN8]

> FN8. Loans purchased by DB Structured Products, Inc. were transferred to Deutsche Bank Alt-A Securities, Inc. Rogovitz Decl. ¶ 6.

Defendants in the *Deutsche Bank* Action issued or underwrote mortgage-backed securities that included as collateral mortgage loans originated by SouthStar Funding, LLC ("SouthStar"), Aegis Mortgage Corporation ("Aegis"), ComUnity Lending, Inc. ("ComUnity"), First Magnus Financial Corporation ("First Magnus"), and Loan Link Financial Services ("Loan Link"). *Deutsche Bank* Action, ECF No. 18 ("J.P. Morgan Joinder in Notice of Removal"); DB Omnibus Opp'n at 5-7.

These loan originators filed for bankruptcy. *In re SouthStar Funding, LLC,* No. 07-65842 (Bankr.N.D.Ga.); *In re Aegis Mortg. Corp.,* No. 07-11119 (Bankr.D.Del.); *In re ComUnity Lending, Inc.,* No. 08-50030 (Bankr.N.D.Cal.); *In re First Magnus Fin. Corp.,* No. 07-01578 (Bankr.D.Ariz.); *In re Loan Link Fin. Servs., Inc.,* No. 10-11777 (Bankr.C.D.Cal.). Defendants had indemnification agreements with these loan originators. *See* Robins Decl. Ex. 5 ("South Star Indemnification Agreement"), Ex. 6 ("Aegis Indemnification Agreement"), Ex. 8 ("ComUnity Indemnification Agreement"), Ex. 10 ("First Magnus Indemnification Agreement"), Ex. 11 ("Loan Link Indemnification Agreement").

As a result of these indemnification agreements, this Court has related-to bankruptcy jurisdiction over the *Deutsche Bank* Action and the *Credit Suisse* Action. Courts in the Ninth Circuit construe related-to bankruptcy jurisdiction broadly. Because of these indemnification agreements, the outcome of the *Deutsche Bank* Action and the *Credit Suisse* Action could conceivably have an effect on estates being administered in bankruptcy. However, only a small fraction of the loans at issue in these two cases were originated by entities in bankruptcy. While the Court has related-to bankruptcy jurisdiction, the remote relationship between these two cases and bankruptcy proceedings supports remanding these cases to state court. *See* Part IV.E, *infra.*

**B.** *Section 22(a) of the Securities Act*
**\*5** Plaintiff contends that under section 22(a) of the Securities Act of 1933, removal was improper. DB Mot. to Remand at 4; CS Corrected Mot. to Remand at 4. Section 22(a) provides, in relevant part, that "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). Plaintiff contends that this specific statute takes precedence over more general removal statutes like section 1452(a). DB Mot. to Remand at 6; CS Mot. to Remand at 6.

Under 28 U.S.C. § 1452(a), a party may remove a claim if the district court has jurisdiction under 28 U.S.C. § 1334. *See* 28 U.S.C. § 1452. Section 1334 establishes original jurisdiction for claims that are "related to cases under title 11." 28 U.S.C. § 1334(b).

There is certainly a conflict between section 22(a) of the Securities Act, which prohibits removal, and section 1452(a), which allows cases to be removed when they are related to bankruptcy proceedings. Two district courts in other circuits have held that section 22(a) prohibits removal under section 1452. *See City of Birmingham Ret. & Relief Fund v. Citigroup,* No. 03-0994, 2003 WL 22697225, at \*3 (N.D.Ala. Aug.12, 2003); *Tennessee Consol. Ret. Sys. v. Citigroup,* No. 03-0128, 2003 WL 22190841, at \*3 (M.D.Tenn. May 9, 2003).

However, the Second Circuit Court of Appeals and two district courts within the Ninth Circuit have determined that section 22(a) does not bar re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

moval of cases where there is related-to bankruptcy jurisdiction. See *California Pub. Emps.' Ret. Sys. v. WorldCom, Inc.,* 368 F.3d 86, 102 (2d Cir.2004) ("we hold that generally nonremovable claims brought under the Securities Act of 1933 may be removed to federal court if they come within the purview of 28 U.S.C. § 1452(a)"); *Carpenters Pension Trust for Southern California v. Ebbers,* No. 03-04878, 299 B.R. 610, 613-15 (C.D.Cal. Sept.9, 2003) (finding that bankruptcy removal provision, as the more recent enactment, controlled over conflicting jurisdictional provision of the Securities Act); *Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.,* No. 03-813, 2003 WL 22025158, at *3 (C.D.Cal. June 30, 2003) ("Section 22(a) proscribes removal based on federal question jurisdiction under 28 U.S.C. section 1441(a), but does not prevent removal based on other grounds.").

Plaintiff's reliance on *Luther v. Countrywide Home Loans Servicing LP,* 533 F.3d 1031 (9th Cir.2008), is misplaced. See DB Mot. to Remand at 6; CS Corrected Mot. to Remand at 6. That case does not discuss the relationship between section 22(a) and section 1452(a); instead, it focuses on the relationship between section 22(a) and the Class Action Fairness Act ("CAFA"). *Id.* at 1034. Relying on the principle of statutory construction that a statute dealing with a specific subject is not submerged by a later, more general statute, the Ninth Circuit Court of Appeals held that "CAFA's general grant of the right of removal of high-dollar class actions does not trump § 22(a)'s specific bar to removal of cases arising under the Securities Act of 1933." *Id.*

**\*6** However, the Ninth Circuit's holding in *Luther* is of little relevance here, where the issue is whether section 22(a) trumps the Court's related-to bankruptcy jurisdiction. The Court agrees with the reasoning of the Second Circuit, the only Court of Appeals to address this precise issue. See *California Pub. Emps.' Ret. Sys.,* 368 F.3d at 102. Both section 22(a) and section 1452(a) apply to a defined class of claims, and the class of claims covered by section 22(a) is no more specific than the class of claims covered by section 1452(a):

> Section 22(a) does not cover only a subset of the claims covered by Section 1452(a). By the same token, Section 1452(a) does not cover only a subset of the claims covered by Section 22(a). Rather, just as Section 1452(a) applies to many claims that are not brought under the 1933 Act, Section 22(a) applies to many claims that are not 'related to' a bankruptcy.

> *Id.*

Furthermore, the Court agrees with the Second Circuit that construing section 22(a) to trump section 1452(a) could interfere with the operation of the Bankruptcy Code. *Id.* at 103-04. As noted earlier, when Congress enacted section 1452(a), it intended "to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp.,* 514 U.S. at 308. Congress crafted section 1452(a) to permit removal of matters related to bankruptcy proceedings, and the Court will not construe section 22(a) in a way that would unduly interfere with its operation. Therefore, the Court finds that section 22(a) does not trump the Court's related-to bankruptcy jurisdiction.

**C.** *The Bank's Charter*

The FHLB-SF is a Federal Home Loan Bank created by the Federal Home Loan Bank Act, 12 U.S.C. §§ 1421-1449. Defendants contend its charter confers federal jurisdiction. DB Omnibus Opp'n at 16-20; CS Omnibus Opp'n at 16-20. Each Federal Home Loan Bank shares a common federal charter, which empowers each Bank's director "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a).

In moving to remand, Plaintiff focuses on the words "in any court of competent jurisdiction." See DB Mot. to Remand at 6-11; CS Corrected Mot. to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

Remand at 7-12. In opposing the motion, Defendants focus on the word "Federal." *See* DB Omnibus Opp'n at 16-20; CS Omnibus Opp'n at 16-20. Plaintiff contends that the charter does not itself create subject-matter jurisdiction; instead, the words "in any court of competent jurisdiction" indicate there must be an independent source of jurisdiction because otherwise the words would be meaningless. Defendants respond that because the provision explicitly mentions federal courts, it confers federal jurisdiction.

Defendants rely on *American National Red Cross v. Solicitor General,* in which the Supreme Court held that a charter authorizing the Red Cross "to sue and be sued in courts of law and equity, State or Federal," conferred federal jurisdiction. 505 U.S. 247, 251, 255, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992) ( *"Red Cross"* ). As noted by Plaintiff, *Red Cross* does not address the meaning of a sue-and-be-sued provision that contains the phrase "any court of competent jurisdiction." However, in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Raines,* the D.C. Circuit applied *Red Cross* to hold that Fannie Mae's charter, which does contain a "competent jurisdiction" clause, confers federal jurisdiction. 534 F.3d 779, 784 (D.C.Cir.2008) ( *"Pirelli"* ).

**\*7** *Pirelli* is not binding on this Court, and *Pirelli* suggests that express reference to federal courts in a sue-and-be-sued clause is both necessary and sufficient to confer jurisdiction. 534 F.3 at 784. In *Red Cross,* the Supreme Court stated "a congressional charter's 'sue and be sued' provision *may* be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." 505 U.S. at 255 (emphasis added). The Supreme Court did not state that a sue-and-be-sued provision that mentions the federal courts *must* be read as conferring jurisdiction. Therefore, this Court reads *Red Cross* as providing that express reference to federal courts in a sue-and-be-sued clause is necessary, but not sufficient, to confer jurisdiction.

The FHLB-SF charter empowers it to sue or be sued "in any court of competent jurisdiction, State or Federal." The charter distinguishes between state and federal courts that possess competent jurisdiction and those that do not. State and federal courts possess competent jurisdiction if there is an independent basis for jurisdiction. The "competent jurisdiction" clause would be superfluous if it did not necessitate a separate jurisdictional grant. *FHLB Seattle I,* 2010 WL 3512503 at \*2; *FHLB Seattle II,* 2010 WL 3662345 at \*2; *Rincon Del Sol, LLC v. Lloyd's of London,* 709 F.Supp.2d 517, 524-25 (S.D.Tex.2010); *Knuckles v. RBMG, Inc.,* 481 F.Supp.2d 559, 563 (S.D.W.Va.2007); *Fed. Nat'l Mortg. Ass'n v. Sealed,* 457 F.Supp.2d 41, 46-47 (D.D.C.2006).

In a case concerning the Indian Child Welfare Act, the Ninth Circuit Court of Appeals concluded that the phrase "any court of competent jurisdiction" did not alone create subject-matter jurisdiction, and the Court went on to determine whether the district court had jurisdiction from an independent source. *Doe v. Mann,* 415 F.3d 1038, 1045 (9th Cir.2005).

The Ninth Circuit's interpretation of the phrase "any court of competent jurisdiction" supports requiring an independent basis for federal jurisdiction. Based on this Court's reading of *Red Cross,* which implies that a reference to federal courts is necessary, but not sufficient, to confer federal jurisdiction, and the Court's reading of *Doe v. Mann,* which interprets "competent jurisdiction" clauses as requiring an independent source of jurisdiction, the Court cannot interpret the FHLB-SF charter as conferring federal jurisdiction.

Defendants point out that the Federal Home Loan Bank of Des Moines, which has an identical charter, has argued in other cases that its charter confers federal jurisdiction. *See Ewing v. Fed. Home Loan Bank of Des Moines,* 645 F.Supp.2d 707, 709 (S.D.Iowa 2009); *O'Connor Enter. Group v. Spindustry Sys. Inc.,* No. 09-1483 (S.D.Tex. May 18, 2009). Defendants contend it would be unfair to allow Plaintiff to take a contradictory position here.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

DB Omnibus Opp'n at 20; CS Omnibus Opp'n at 20.

**\*8** This argument is of no moment because Federal Home Loan Banks are separate commercial entities. While each Federal Home Loan Bank shares a common federal charter, each has its own "organizing certificate" establishing its zone of operation in one of twelve multi-state districts. *See* 12 U.S.C. §§ 1423, 1432(a). There is no legal support for Defendants' suggestion that the FHLB-SF should be bound by a contrary position taken by the Federal Home Loan Bank of Des Moines in unrelated lawsuits. Having reviewed the authorities discussing sue-and-be-sued provisions, the Court finds that the charter of the FHLB-SF does not, by itself, confer jurisdiction over this action.

**D.** *Whether the Bank is an Agency of the United States*

Section 1345 of Title 28 of the United States Code provides that "the district courts shall have original jurisdiction of all civil actions ... commenced by the United States, or by any agency or officer thereof...." Defendants contend that the FHLB-SF is an agency of the United States, and therefore section 1345 creates federal jurisdiction. DB Omnibus Opp'n at 21; CS Omnibus Opp'n at 21. Plaintiff contends it is not a federal agency.

Defendants rely on *Fahey v. O'Melveny & Myers,* a case in which the Ninth Circuit Court of Appeals held that "all Federal Home Loan Banks within the System are, and operate as, public agencies and instrumentalities of the federal government." 200 F.2d 420, 446-47 (9th Cir.1952). Plaintiff points out that in the years since *Fahey* was decided, Congress has reduced federal control over the management and operations of the Federal Home Loan Banks. DB Mot. to Remand at 12; CS Corrected Mot. to Remand at 13.

Plaintiffs rely on *Hoag Ranches v. Stockton Production Credit Association,* where the Ninth Circuit Court of Appeals articulated a six-factor test to determine when a party is a federal agency for purposes of statutes like 28 U.S.C. § 1345. 846 F.2d 1225, 1227-28 (9th Cir.1988) (*"In re Hoag"* ). The Ninth Circuit noted that "[m]any financial institutions are federally chartered and regulated and are considered federal instrumentalities, without attaining the status of government agencies within the meaning of federal procedural rules." *Id.* Applying the six-factor test, and taking into account the history of the government's reduced involvement in Production Credit Agencies ("PCAs"), the Ninth Circuit held that PCAs are not government agencies. *Id.* at 1228-29.

Recently, in two cases similar to the ones before this Court, Judge Martinez in the Western District of Washington ruled that *Fahey* was inapposite, and applying the six-factor *In re Hoag* test, he determined that the Federal Home Loan Bank of Seattle was not a government agency. *FHLB Seattle I,* 2010 WL 3512503 at \*2-4; *FHLB Seattle II,* 2010 WL 3662345 at \*2-4.

The Court agrees with Judge Martinez that *Fahey* does not address the question of an entity's agency status for purposes of section 1345, and so it does not apply here. In *Fahey,* the Ninth Circuit reversed the trial court's award of attorneys' fees to counsel for the former Federal Home Loan Bank of Los Angeles. 200 F.2d at 481. The Ninth Circuit rejected the argument that eliminating the Bank of Los Angeles was a confiscation of private property interests. *Id.* at 446-47. The court's focus was the "private versus public character of Federal Home Loan Banks." *Id.* at 446. As public entities, members had no proprietary right to the continued existence of any Home Loan Bank eliminated by the Board. *Id.* at 444-47.

**\*9** Since the Ninth Circuit's statement in *Fahey* that Federal Home Loan Banks are public agencies and instrumentalities, it is clear that Congress has reduced government control of the management and operations of Federal Home Loan Banks. In 1986, the Ninth Circuit Court of Appeals made the following statement concerning the FHLBSF:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

[T]he Bank is privately owned and privately funded. It receives no government money, and its consolidated obligations are not guaranteed by the government. It is engaged in the business of making loans, which must be sound so that its obligations will be marketable. Its employees are not in the civil service, and it does not perform regulatory functions.

*Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986). In 1989, Congress removed the power of Federal Home Loan Banks to serve as agents of the federal government in supervising federal savings and loan institutions. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101-73 (Aug. 9, 1989); *see also* H.R. Conf. Rep. 101-222, reprinted at 1989 U.S.C.C.A.N. 432, 1989 WL 168167 at *11 ("This Title abolishes the Federal Home Loan Bank Board ... and the position of the Chairman of the Bank Board as the chief regulator of the savings and loan industry."). In 1999, Congress provided that members of the Federal Home Loan Banks "shall own the retained earnings, surplus, undivided profits and equity reserves, if any, of the bank." Gramm-Leach-Bliley Act, Pub.L. No. 106-102 § 608 (Nov. 12, 1999) (codified at 12 U.S.C. § 1426(h)). In 2008, Congress eliminated the government's power to appoint directors of a Federal Home Loan Bank. Housing and Economic Recovery Act, Pub.L. No. 110-289 (July 30, 2008) §§ 1202, 1204.

In light of this history of reduced government control, the Court must apply the *In re Hoag* factors to determine if the FHLB-SF is a federal agency. The Court must consider:

(1) the extent to which the alleged agency performs a governmental function; (2) the scope of government involvement in the organization's management; (3) whether its operations are financed by the government; (4) whether persons other than the government have a proprietary interest in the alleged agency and whether the government's interest is merely custodial or incidental; (5) whether the organization is referred to as an agency in other statutes; and (6) whether the organization is treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act.

*In re Hoag,* 846 F.2d at 1227-28. Applying this test, the Court finds that the FHLB-SF is not a federal agency.

The first factor favors neither Plaintiff nor Defendants. It is clear that the Federal Home Loan Bank System was created by Congress to provide a reliable source of funds to homebuyers. 12 U.S.C. §§ 1421-1449. On the other hand, as noted by the Ninth Circuit, "[t]he fact that a business is subject to extensive and detailed regulation does not alone render its actions governmental." *Fidelity Fin. Corp.,* 792 F.2d at 1435. The Bank does not perform regulatory functions. *Id.* Indeed, the Ninth Circuit stated it was "questionable" whether the FHLB-SF's actions could be deemed governmental. *Id.*

**\*10** While this first factor is neutral, most of the others tip in favor of a finding that the FHLB-SF is not a federal agency. With regard to the second factor, the government has very little involvement in the FHLB-SF's management. The Board of Directors of each Federal Home Loan Bank, not the government, has the exclusive authority to manage its operations. 12 U.S.C. § 1427. Indeed, while some of the directors used to be appointed by the Federal Housing Finance Board, that no longer occurs. *Id.* § 1427(g).

With regard to whether its operations are government-financed, "the Bank is privately owned and privately funded. It receives no government money...." *Fidelity Fin. Corp.,* 792 F.2d at 1435. Defendants point to the FHLB-SF's tax-exempt status under 12 U.S.C. § 1443, and they cite *Reagan v. Taxation with Representation of Washington,* 461 U.S. 540, 544, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983) for the proposition that tax exemptions are tantamount to federal financing. DB Omnibus

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Opp'n at 23-24; CS Omnibus Opp'n at 23-24. However, the Court doubts that Congress intends for every organization receiving tax exemptions to be considered a government agency.

With regard to whether the government's interest in the FHLBSF is proprietary, or merely custodial or incidental, this fourth factor tips in favor of the Plaintiff. The Bank is privately owned and capitalized only by its members. *Fidelity Fin. Corp.,* 792 F.2d at 1435. Defendants rely on *Acron Investments, Inc. v. Federal Savings & Loan Insurance Corp.,* where the Ninth Circuit Court of Appeals found that the Federal Savings & Loan Insurance Corporation was a federal agency, even though there was no outstanding stock to be owned. 363 F.2d 236, 240 (9th Cir.1966). In *Acron,* however, all of the corporation's stock had been retired. *See id.* Here, it is all privately owned. Also, Defendants have not shown that the federal government's control over the Federal Home Loan Banks is more than custodial or incidental. Defendants point to 12 U.S.C. § 1427, but in fact the Federal Housing Finance Board has less control than it once had because it no longer has to the power to designate the chairman and vice-chairman of the board of directors of each Bank. 12 U.S.C. § 1427(g).

Defendants point out that Congress has the authority to reorganize or eliminate the FHLB-SF, but Congress has the same power with respect to Federal Reserve Banks, and the Eighth Circuit Court of Appeals has held that Federal Reserve Banks are not federal agencies. *See Scott v. Fed. Reserve Bank of Kansas City,* 406 F.3d 532, 538 (8th Cir.2005) ("[E]ach Federal Reserve Bank is owned by the commercial banks within its district. Accordingly, although the government may have a substantial interest in the operation of the Federal Reserve Banks, it does not have a proprietary interest in them."). Indeed, the corporate structure of Federal Home Loan Banks is quite similar to the corporate structure of Federal Reserve Banks. *See FHLB of Seattle I,* 2010 WL 3662345 at *4. Especially in light of the fact that the FHLB-SF is privately owned, the Court finds that the government's interest is not proprietary.

**\*11** With regard to the fifth factor, Defendants offer only 12 C.F.R. § 201.108(b), which lists Federal Home Loan Bank notes and bonds as one among a list of twenty "agency obligations eligible as collateral for advances." This oblique reference in one regulation to Federal Home Loan Banks as agencies, and the absence of any reference to the Banks as agencies in any statute, undermines rather than supports Defendants' contention that the FHLB-SF is an agency.

The final *In re Hoag* factor considers whether the organization is treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act. This factor is neutral. In *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* the district court held that the FHLB-SF was a government agency for purposes of the Administrative Procedure Act. 589 F.Supp. 885, 894 (N.D.Cal.1983). However, in *Rheams v. Bankston, Wright & Greenhill,* the district court held that the FHLB of Dallas was not a government agency for the purposes of the Federal Tort Claims Act. 756 F.Supp. 1004, 1008 (W.D.Tex.1991).

Overall, the Court finds that the first and sixth factors are neutral, but the other four factors tip in Plaintiff's favor. Therefore, FHLB-SF is not a government agency for the purposes of section 1345.

**E.** *Equitable Remand*

Secion 1452(b) of Title 28 of the United States Code provides that a court to which a claim is removed pursuant to Section 1334 "may remand such claim ... on any equitable ground." Here, the only valid basis for removal is the Court's related-to bankruptcy jurisdiction. Courts typically consider seven factors in determining whether to remand a related-to bankruptcy case on equitable grounds:

(1) The effect of the action on the administration of the bankruptcy estate; (2) the extent to which

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy estate; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court.

*Hopkins v. Plant Insulation Co.,* 349 B.R. 805, 813 (N.D.Cal.2006) (citing *Williams v. Shell Oil Co.,* 169 B.R. 684, 692-93 (S.D.Cal.1994)).

The Court agrees with Plaintiff that the equities favor remand. It is clear to this Court that these two cases have only a remote connection to bankruptcy proceedings. In the *Credit Suisse* Action, no more than six of the seventy-eight trusts had loans from originators that are bankrupt.[FN9] In four of these trusts, the percentage of loans originated by bankrupt originators was too small for those originators to be disclosed in the prospectus supplements for the trusts. *See* CS Mot. to Remand at 17; CS Corrected Omnibus Reply at 16. With regard to the fifth trust, MASTR 2005-6, and as discussed further below, IndyMac is not itself in bankruptcy. Therefore, the Court's related-to bankruptcy jurisdiction in the *Credit Suisse* Action derives in large part from the sixth trust, DBALT 2005-6, where AHM originated 56.53% of the loans. *See* Rogovitz Decl. ¶ 3.c. However, this trust is only one of seventy-eight trusts at issue in the case. Based on the very small number of loans in the trusts at issue that have bankrupt originators, the Court finds that the *Credit Suisse* Action has a very remote connection to bankruptcy proceedings.[FN10]

> [FN9.] These six trusts are DBALT 2007-2, DBALT 2005-6, DBALT 2005-5, MASTR 2005-6, BALTA 2004-12, and SAMI 2007-AR 5. *See* CS Notice of Removal; CS FAC Schedules 12, 15, 16 and 49; ECF No. 14 ("UBS Joinder in Notice of Removal"); CS Omnibus Opp'n at 3-7; CS Corrected Omnibus Reply at 16 n. 9.

> [FN10.] Plaintiff represents that it will not present evidence in the *Credit Suisse* Action that Deutsche Bank or UBS made untrue or misleading statements about any loans originated by AHM, IndyMac, or Alliance. CS Mot. to Remand at 18; CS Omnibus Reply at 17. Going forward, Plaintiff is bound by that representation in the *Credit Suisse* Action.

**\*12** In the *Deutsche Bank* Action, IndyMac-the loan originator or depositor for at least sixteen of the trusts at issue[FN11]-is not itself in bankruptcy. Instead, IndyMac's parent company, IndyMac Bancorp, is in bankruptcy. *See In re IndyMac Bancorp, Inc.,* No. 08-21752 (Bankr.C.D.Cal.). IndyMac, the subsidiary, was shut down by the FDIC on July 11, 2008, and the FDIC was appointed as its receiver. DB Mot. to Remand at 17. On November 19, 2009, the FDIC determined that "the assets of IndyMac Bank are insufficient to make any distribution on general unsecured claims and therefore, such claims, asserted or unasserted, will recover nothing and have no value." FDIC Notice, 74 F.R. 59540-01, 2009 WL 3832288 at \*59540 (F.R. Nov. 19, 2009).

> [FN11.] Defendants' chart indicates that IndyMac was the only originator or depositor for the following trusts: INDX 2004-AR13; INDX 2007-AR21IP; INDX 2007 AR19; INDX 2007-AR5; INDX 2006 AR41; INDX 2006-AR33; INDX 2006-R1 A1; INDX 2004-AR15; INDX 2005-AR21; INDX 2005-AR7; INDX 2005-AR5; INDX 2007-FLX6; INDX 2007-FLX5; and INDX 2005-AR3. For HVMLT 2004-7, IndyMac was the originator for approximately twenty four percent of the loans, and for MASTR 2005-6, the prospectus does not specify how many loans were originated by IndyMac. *See* DB Omnibus Opp'n at 3-7.

Plaintiff contends that this FDIC Notice shows there are no assets of IndyMac that will be returned to the estate of IndyMac Bancorp, and as a result, this action can have no effect on the IndyMac Ban-

corp bankruptcy proceeding. DB Mot. to Remand at 17-18.

Defendants respond by pointing out that the FDIC, as receiver for IndyMac, intervened in an action against IndyMac's directors and officers to recover for injuries to IndyMac. DB Omnibus Opp'n at 11 n. 15; Falzone Decl. ¶ 6, Ex. 5. [FN12] However, in December 2009, the FDIC stated IndyMac's liabilities exceeded its assets by almost $13 billion. DB Omnibus Reply at 17. Hence, even if the FDIC recovers money as an intervenor, it is very unlikely this recovery will flow back to the bankrupt parent. While it is conceivable that the *Deutsche Bank* action could have an effect on the IndyMac Bancorp bankruptcy, that outcome is unlikely. The remote connection between this case and the IndyMac Bancorp bankruptcy favors remanding the case to state court.

> [FN12]. John M. Falzone ("Falzone"), attorney for Deutsche Bank Securities, Inc., Deutsche Alt-A Securities, Inc. and DB Structured Products, Inc., filed a declaration in opposition to Plaintiff's motions to remand. *Deutsche Bank* Action, ECF No. 94; *Credit Suisse* Action, ECF No. 93.

In the *Deutsche Bank* Action, AHM originated all of the loans in two of the trusts at issue, [FN13] thirty-nine percent of the loans in a third trust, [FN14] and for one other trust, AHM was not a principal originator, [FN15] which means it originated less than ten percent of the loans. There are thirty-eight trusts at issue in the *Deutsche Bank* Action. DB FAC ¶¶ 1-3. AHM did not originate any loans in most of them, and it originated all of the loans in only two of them. Unlike IndyMac, AHM is in bankruptcy. However, given that AHM originated a very small fraction of the loans in the trusts at issue, the relationship between the *Deutsche Bank* Action and the AHM bankruptcy proceeding is remote.

> [FN13]. HVMLT 2006-7 and HVMLT 2007-5.

> [FN14]. DBALT 2007-AR2.

> [FN15]. WMALT 2005-8.

In the *Deutsche Bank* Action, Defendants also rely on the bankruptcy filings of Alliance, SouthStar, ComUnity, First Magnus, Loan Link, and Aegis Mortgage as a basis for establishing related-to bankruptcy jurisdiction. DB Omnibus Opp'n at 3-7. Based on indemnification agreements between Defendants and these entities, this action could conceivably have an effect on these bankruptcy proceedings. However, these entities originated a very small fraction of the loans in only six of the trusts at issue. [FN16] As such, the relationship between this case and these entities' bankruptcy proceedings is remote. These tenuous relationships to bankruptcy proceedings warrant remanding the *Deutsche Bank* Action to state court.

> [FN16]. Alliance originated approximately three percent of the loans in DBALT 2007-AR2, and it was not a principal originator of the loans in WMALT 2006-1 and WMALT 2006-3. SouthStar originated approximately twenty-four percent of the loans in SAMI 2007-AR2, and ComUnity was not a principal originator in this trust. First Magnus was not a principal originator in WMALT 2005-5; WMALT 2005-8; WMALT 2006-1; and WMALT 2006-3. Loan Link was not a principal originator in WMALT 2006-1 and WMALT 2006-3. Aegis was a principal originator in WMALT 2005-5; WMALT 2005-8; WMALT 2006-1; and WMALT 2006-3.

**\*13** In arguing that there is no equitable basis for remand, Defendants point out that Plaintiff asserts state and federal law claims. DB Omnibus Opp'n at 14; CS Omnibus Opp'n at 14-15. However, the only federal law claims are ones that Congress has provided are not removable if brought in state court. *See* 15 U.S .C. § 77v(a). Accordingly, the interests of comity warrant remanding this case to state court.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

Section 1452(b) affords "an unusually broad grant of authority." *In re Roman Catholic Bishop of San Diego,* 374 B.R. 756, 761. (Bankr.S.D.Cal.2007). Here, the vast majority of the mortgage loans in the trusts at issue were underwritten by entities that are not in bankruptcy. While both the *Credit Suisse* Action and the *Deutsche Bank* Action are related to a number of bankruptcy proceedings based on the effect they could have on those proceedings, that relationship is remote because it concerns only a small fraction of the loans in the trusts at issue. The Court finds that the equities favor remand to state court.

**F. Section 1441(c)**

As well as joining in the opposition of the other Defendants, UBS and MAST filed separate opposition briefs, contending that the entire action is removable under 28 U.S.C. § 1441(c). *See* UBS and MAST DB Opp'n; UBS and MAST CS Opp'n. This statute provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c). Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." UBS and MAST contend that the causes of action brought against them in the *Deutsche Bank* Action-the first and fifth causes of action-are separate and independent from the non-removal claims in these cases. UBS and Mast DB Opp'n at 4.

In the *Deutsche Bank* Action, the first cause of action alleges violation of the California Corporations Code and the fifth cause of action alleges negligent misrepresentation. *See* DB FAC ¶¶ 120-24, 155-62. Neither cause of action falls within the scope of the federal question or "arising under" jurisdiction conferred by Section 1331. Therefore, Section 1441(c)-which permits an entire action to be removed whenever a separate and independent claim within the jurisdiction conferred by Section 1331 is joined with otherwise non-removable claims-simply does not apply.

UBS and MAST also contend that there is federal question jurisdiction because of the FHLB-SF's charter and because the FHLBSF is a federal agency. UBS and MAST Opp'n at 5. Plaintiff disputes whether the charter or its agency status can be a basis for jurisdiction under Section 1331. DB Supp. Reply at 4. As explained above, *see* Part IV.C and D, *supra,* the charter does not confer jurisdiction, and FHLB-SF is not a federal agency. Hence, the Court does not need to resolve the question of whether there is federal question jurisdiction based on the charter or the FHLB-SF's agency status.

**V. CONCLUSION**

*\*14* While the Court has related-to bankruptcy jurisdiction over the *Deutsche Bank* Action and the *Credit Suisse* Action, the Court concludes that the equities favor remand. It is true, as Defendants contend, that section 22(a) of the Securities Act of 1933 does not bar removal. However, the charter of the FHLB-SF does not confer federal jurisdiction, and the FHLB-SF is not a federal agency. Related-to bankruptcy jurisdiction is the only basis for removing these two cases to federal court, but the relationship between these cases and bankruptcy proceedings is remote. As such, the Court exercises its authority to remand these cases to state court. The Court GRANTS the motions to remand filed by Plaintiff Federal Home Loan Bank of San Francisco in Case No. 10-3039 and in Case No. 10-3045.

The Court DENIES as moot Plaintiff's Motion for Leave to File a Second Amended Complaint in Case No. 10-3045. These two cases are remanded to the California Superior Court for the City and County of San Francisco.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5394742 (N.D.Cal.)
**(Cite as: 2010 WL 5394742 (N.D.Cal.))**

IT IS SO ORDERED.

N.D.Cal.,2010.
Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.
Slip Copy, 2010 WL 5394742 (N.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.